E1314 - J72

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| ATONIA BAILEY, 901 South Weyant Ave., Columbus, Ohio 43227, | : : : | Case No. 11CVH9 11456 |
| Plaintiff, | : | JUDGE |
| vs. | : | JURY DEMAND ENDORSED HEREON |
| GC SERVICES LIMITED PARTNERSHIP, 6330 Gulfton Houston, Texas 77081 | : : : : : | |
| Also Serve Statutory Agent: | : | |
| CT CORPORATION SYSTEM, 1300 East 9th Street Cleveland, Ohio 44114, | : : : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff Atonia Bailey (referred to herein as "Plaintiff"), for her Complaint against Defendant GC Services Limited Partnership (referred to herein as "Defendant"), hereby states as follows:

### PARTIES AND VENUE

1. Plaintiff is a resident of Columbus in Franklin County, Ohio. Plaintiff brings this action to redress injuries committed against her as a result of Defendant's actions.

2. Upon information and belief, Defendant conducts substantial business in Franklin County, Ohio.

3. This Court has subject matter jurisdiction and venue pursuant to Ohio R. Civ. P. 3(B)(1), 3(B)(3), and 3(B)(6) because Plaintiff's claims arise under the laws of

{00039136}



E1314 - J73

the State of Ohio, the Defendant conducted activities giving rise to Plaintiff's claims in Franklin County, and Franklin County is the county in which all or part of the claims for relief arose.

4. Plaintiff is an employee as defined in Chapter 4112 of the Ohio Revised Code.

5. Defendant is an employer as defined in Chapter 4112 of the Ohio Revised Code.

## FACTS

6. Plaintiff was employed by Defendant from on or about December 6, 2011 as a collection account manager until on or about May 12, 2011, when her employment was constructively terminated.

7. Plaintiff interviewed for the position with, and was hired by Michael Copeland.

8. When Plaintiff was hired, she was placed on Copeland's team under his supervision.

9. As soon as Plaintiff started her employment, Copeland began doing and saying things that made her feel very uncomfortable.

10. Copeland frequently made inappropriate, sexual remarks to Plaintiff.

11. For example, while looking at Plaintiff's crotch-area, Copeland told her "I know your husband love every bit of that."

12. Copeland would also sit uncomfortably close to Plaintiff with his crotch near her face, rub her shoulders and caress her hands without Plaintiff's permission and after Plaintiff asked him to stop.

13. Upon information and belief, Copeland treated the other females on his team in a similar fashion.

14. Plaintiff did not feel comfortable making a complaint to upper-management, Dave Johnson and Aaron Nickels, because they were both close friends with Copeland.

{00039136}2

E1314 - J74

15. Plaintiff specifically made a complaint to Copeland about his behavior in or around January 2011.

16. After Plaintiff made the complaint, Copeland continued his harassing behavior.

17. Plaintiff met with Julie (LNU) of Human Resources on or about April 26, 2011 to complain about the ongoing harassment.

18. Plaintiff also requested that she be transferred to a different department not under the supervision of Copeland.

19. The next day, Human Resources informed Copeland that a complaint had been made about his behavior.

20. Upon information and belief Copeland knew that Plaintiff was that one who had made the complaint.

21. After Plaintiff made her complaint to HR, three other female coworkers also complained about Copeland's harassing behavior.

22. Human resources never informed Plaintiff that it was investigating her complaint, never disciplined Copeland, and sent Plaintiff back to work under his supervision.

23. Not only did Copeland continue to harass Plaintiff after her complaint, but Copeland's supervisor, Johnson began to harass her as well.

24. Johnson singled Plaintiff out by reprimanding her for not following company policy in order to set her up for failure, by unnecessarily singling her out for discipline, and by making condescending remarks to her on a daily basis.

25. In or around early May 2010 Plaintiff requested and was granted a schedule change.

{00039136}3

E1314 - J75

26. When Plaintiff reported to work pursuant to the revised schedule, Johnson screamed at her and demanded she leave even though Plaintiff tried to explain that her schedule had been changed.

27. Plaintiff felt threatened by Johnson's actions and immediately called Human Resources to report the incident.

28. After Plaintiff made her complaint to Human Resources, Johnson continued to harass her, and make comments implying that she was a "snitch."

29. Due to the hostile environment, Plaintiff became hesitant of coming to work.

30. On May 12, 2011 Plaintiff, along with the three other females who had complained about Copeland were moved to a different team under the supervision of Eric Graves, but still under the management of Johnson.

31. Plaintiff was still in close proximity to Copeland after the move. In fact, Copeland could access Plaintiff at any time.

32. On Plaintiff's first day on her new team, Johnson repeatedly walked by her work station, and gave her a dirty looks, and made negative comments to her.

33. For example, in reference to Plaintiff, Plaintiff heard Johnson say "I can't wait till all this drama leaves."

34. One of the other female employees who complained about Copeland was asked by Aaron Nickels, "where is your loyalty?"

35. At one point, Johnson also walked past Plaintiff's workstation and bumped her chair with a "termination box"—a box used by terminated employees to carry out their personal belongings after being fired.

E1314 - J76

36. Plaintiff's work environment became so untenable due to the severe and pervasive sexual harassment and retaliation. As a result Plaintiff was forced to quit her job.

37. Defendant failed to take any steps to prevent Copeland from sexually harassing Plaintiff and failed to take any corrective action against Copeland.

38. In fact, after Plaintiff was forced to quit, Copeland continued to harass women. These women eventually complained to Human Resources.

39. Upon information and belief, Copeland was terminated for sexually harassing women after Plaintiff was forced to quit.

## FIRST CAUSE OF ACTION

### (Sex Discrimination - O.R.C. §4112.02(A))

40. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

41. Plaintiff is a female.

42. Upon information and belief, Defendant treated Plaintiff differently than other employees who were not female.

43. Defendant discriminated against Plaintiff on the basis of her sex by constructively terminating her employment, by refusing to grant her a reasonable transfer, refusing to provide appropriate corrective action, refusing to provide a reasonable and non-hostile work environment, by retaliating against her, and/or by otherwise discriminating against her in the terms, privileges and conditions of employment because of her gender.

44. Defendant has a pattern and practice of discriminating against female workers.

{00039136}5

45. At all times material herein, Defendant acted in conscious and/or reckless disregard for Plaintiff's rights, with great probability that its acts and omissions would cause Plaintiff substantial harm.

46. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer lost wages and fringe benefits.

## SECOND CAUSE OF ACTION

### (Sexual Harassment - Hostile Work Environment - O.R.C. 4112.02(A))

47. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein

48. Defendant engaged in conduct that violates 4112.02(A) prohibiting sex discrimination, by harassing Plaintiff, and by creating and encouraging a hostile work environment for Plaintiff.

49. The harassment of Plaintiff by Copeland and Johnson was unwelcome, which was indicated by Plaintiff. Defendant, Copeland and Johnson were aware of this fact.

50. The harassment was based on Plaintiff's sex.

51. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

52. Defendant knew or should have known of the harassment, yet failed to take immediate and appropriate corrective action.

53. As a result of the hostile environment described above, Plaintiff was constructively discharged from her employment.

54. Defendant's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.

E1314 - J78

## THIRD CAUSE OF ACTION

(Retaliation– O.R.C. 4112.02 and Common Law)

55. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

56. In or around January 2011 Plaintiff made a formal complaint to Human Resources opposing her hostile work environment.

57. Plaintiff made another complaint on or about April 24, 2011 opposing her hostile work environment.

58. Plaintiff engaged in a protected activity by, *inter alia*, opposing her hostile work environment.

59. Defendant knew that Plaintiff engaged in protected activity.

60. Defendant intentionally retaliated against Plaintiff for engaging in one or more protected activities by constructively terminating her employment, refusing to provide appropriate corrective action, refusing to provide a reasonable and non-hostile work environment, and otherwise discriminating against her in the terms, privileges and conditions of employment.

61. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer into the future, lost wages and fringe benefits.

62. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for all relief available under this section.

## FOURTH CAUSE OF ACTION

### (Gender Discrimination/Retaliation – O.R.C. 4112.99)

63. Plaintiff realleges herein each of the allegations contained in the preceding paragraphs of her Complaint as if fully restated herein.

64. Defendant's conduct in discriminating and/or retaliating against Plaintiff on the basis of gender and/or participation in one or more protected activities violates Chapter 4112 of the Ohio Revised Code and therefore constitutes violation(s) of Section 4112.99 of the Ohio Revised Code.

65. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages and punitive damages and all other relief available under this section.

66. At all times material herein, Defendant acted in conscious and/or reckless disregard for Plaintiff's rights, with great probability that its acts and omissions would cause substantial harm to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount of not less than Twenty-Five Thousand Dollars ($25,000.00), back pay and benefits, front pay and benefits, compensatory damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees and such other relief as the Court may deem just and proper.

Respectfully submitted,

By R/M

Robert J. Beggs (0002966)
(John.Beggs@BeggsCaudill.com)
Danny L. Caudill (0078859)

{00039136}8

(Danny.Caudill@BeggsCaudill.com)
Gregory R. Mansell (0085197)
(Greg.Mansell@BeggsCaudill.com)
BEGGS CAUDILL, LLC
7240 Muirfield Drive
Dublin, Ohio 43017
(614) 610-4134
Fax (614) 448-4544
Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby requests a jury of eight (8) persons to hear all issues so triable.

*/s/ Gregory R. Mansell*
Gregory R. Mansell (0085197)

{00039136}9